**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN TRANSPARENCY,**<br>*d/b/a* OpenTheBooks.com,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES,**<br><br>**Defendant.** | **Civil No. 21-cv-02821 (APM)** |

**MEMORANDUM OPINION**

**I.**

Following an evidentiary hearing, the court now revisits Defendant U.S. Department of Health and Human Services' Motion for Summary Judgment, ECF No. 24, and Plaintiff American Transparency, d/b/a OpenTheBooks.com's, Cross-Motion for Summary Judgment, ECF No. 28. For the reasons explained below, the court grants Defendant's Motion and denies Plaintiff's Cross-Motion.

**II.**

The court detailed the background of this case in its earlier Memorandum Opinion and Order and provides here only the facts and procedural history necessary to finally resolve the sole remaining issue. *See Am. Transparency v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-2821, 2025 WL 2779929, at *1–2 (D.D.C. Sep. 30, 2025).

In September 2021, Plaintiff submitted a Freedom of Information Act (FOIA) request to the National Institutes of Health (NIH) seeking information about royalties that NIH paid to its

employees. *Id.* at *1. As relevant here, Defendant withheld the royalty amounts paid to inventors, otherwise known as "inventor awards," pursuant to Exemptions 3, 4, and 6. *Id.*

The parties cross-moved for summary judgment as to all three exemptions. The court concluded that Defendant could not withhold the information under Exemption 6. *Id.* at *5. But the court denied the parties' motions as to Exemptions 3 and 4. *See id.* at *5–7. A genuine dispute of material fact existed as to whether the inventor-award amounts could be used to back-calculate the amounts that *licensees* paid to NIH in royalties, which are confidential. *See id.*; *Pub. Citizen Health Rsch. Grp. v. NIH*, 209 F. Supp. 2d 37, 49 (D.D.C. 2002).

On March 10, 2026, the court held an evidentiary hearing. The court heard testimony from Dr. Tara Kirby, Director of the NIH Office of Technology Transfer; Karen Lampe, NIH's Acting FOIA Officer; and Amber Todoroff, Plaintiff's Deputy Policy Editor. 3/10/16 Hr'g Tr., ECF No. 43 [hereinafter Tr.], at 9:14-16, 95:7-9, 107:21-24. The parties then submitted supplemental briefs. *See* Pl.'s Suppl. Br., ECF No. 45 [hereinafter Pl.'s Br.]; Def.'s Suppl. Br. in Further Supp. of its Mot. for Summ. J., ECF No. 46 [hereinafter Def.'s Br.].

**III.**

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In FOIA cases, the agency has the burden to show that it properly withheld the requested information. *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988). The agency must show that (1) the requested materials fall within the scope of the claimed exemption, and (2) "it is reasonably foreseeable that release of those materials would cause harm to an interest protected by" the exemption. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) (citing 5 U.S.C. § 552(a)(8)(A)(i)(I)). Additionally, even if the agency

demonstrates that an exemption applies, it must still "disclose 'any reasonably segregable portion of a record' after removing the exempt material and must note the 'amount of information deleted, and the exemption under which the deletion is made.'" *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 62 (D.C. Cir. 2018) (cleaned up) (quoting 5 U.S.C. § 552(b)).

**IV.**

Defendant seeks to withhold the requested information under Exemptions 3 and 4. Exemption 3 "permits agencies to withhold information exempted by a qualifying nondisclosure statute" other than FOIA. *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 162 (D.C. Cir. 2012) (citing 5 U.S.C. § 552(b)(3)). Exemption 4 allows agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). As before, because the parties agree that, in this case, the two exemption inquiries are one and the same, the court focuses its analysis on Exemption 4. *See Am. Transparency*, 2025 WL 2779929, at *5.

The Exemption 4 analysis has three component parts: the agency must "demonstrate that the withheld information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 58 F.4th 1255, 1262 (D.C. Cir. 2023) (internal quotation marks omitted). The parties do not dispute the first element. *See* Pl.'s Cross-Mot. for Summ. J., ECF No. 28, Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Cross-Mot., ECF No. 28-1 [hereinafter Pl.'s Mem.], at 6–12 (disputing only the second and third). The court takes the latter two elements in turn.

**A.**

Information is "obtained from a person" if it is "obtained outside the government." *Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 360 (1979). Even where an

agency "substantially reformulate[s]" the information received, the agency may treat it as "obtained from a person" if disclosure would reveal the underlying confidential information, *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1056–57 (D.C. Cir. 2023) (alteration in original), even if only through "extrapolat[ion]," *Gulf & W. Indus. v. United States*, 615 F.2d 527, 529–30 (D.C. Cir. 1979). NIH determines inventor awards internally pursuant to a publicly available formula. *Am. Transparency*, 2025 WL 2779929, at *6. NIH distributes to its inventors the first $2,000 of a licensee's royalty payments, 15% of the royalties above $2,000 and up to $50,000, and 25% of the royalties above $50,000, up to an annual cap. *Id.* Defendant maintains that, if it revealed the inventor-award amounts, members of the public could use that formula to work backwards and determine the royalty amount paid by the licensee, *see id.*, which is a sum "obtained from a person" outside the government, *see Pub. Citizen*, 209 F. Supp. 2d at 44–45.

At the outset, Plaintiff argues that there is "no case standing for the proposition that Exemption 4 authorizes withholding responsive information that can be used to back calculate other information provided by a third party." Pl.'s Br. at 7. Plaintiff acknowledges that the caselaw uses terms like "incorporates" and "extrapolates," but it insists that the present case does not fit into those buckets. *See id.* at 7–8. For support, Plaintiff emphasizes that neither *Flyers Rights* nor *Gulf & Western* involved back-calculations. *Id.* at 8. The court is unpersuaded. True, neither case is perfectly analogous. *See Flyers Rts.*, 71 F.4th at 1056–57 (permitting the agency to withhold its own comments on documents where they incorporated the provider's information); *Gulf & W. Indus.*, 615 F.2d at 529–30 & n.6 (permitting the agency to withhold portions of an agency-authored report that implicated the provider's commercial data, such as its profits and costs). But the concept of "back calculation" fits comfortably within the D.C. Circuit's concern that a member

of the public may be able to "extrapolate[]" confidential commercial information from a disclosure. *Id.* at 530.

And the cases Plaintiff cites for the proposition that Exemption 4 does not apply where the government performs its own "analysis" or "substantially reformulate[s]" the provided information, *see* Pl.'s Br. at 8–9,[1] all preceded *Flyers Rights*' clear articulation to the contrary, *see* 71 F.4th at 1057 (rejecting the argument that Exemption 4 does not apply where "the agency 'analyzes' or substantially reformulate[s]' the information," as "these standards appear nowhere in the statute" (alteration in original) (citations omitted)). The extensive description of how NIH "substantially reformulates royalty amounts when determining Inventor Awards," *see* Pl.'s Br. at 10–13, and the additional evidence provided in support, *see* Pl.'s Notice of Suppl. Evid., ECF No. 47, are thus immaterial. What matters is whether "releasing [the information] unredacted would reveal confidential commercial information obtained from" outside the government; if so, Exemption 4 applies. *Flyers Rts.*, 71 F.4th at 1057. The court therefore proceeds to determine whether such back-calculation is possible.

The court finds that it is. At the evidentiary hearing, Dr. Kirby provided an illustrative example based on the redacted royalty reports.[2] There, each of four inventors received $48,900 for their work related to a particular license in a six-month reporting period. *See* Tr. at 23:6-11. For ease, the court will focus on just one inventor, although the same method would apply to the total amount distributed to all four. In that example, since the distribution exceeded $2,000, one can quickly deduce that the licensee's royalty payments exceeded that amount, as inventors receive

[1] Citing *Fisher v. Renegotiation Bd.*, 355 F. Supp. 1171, 1174 (D.D.C. 1973); *Phila. Newspapers, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 69 F. Supp. 2d 63, 67 (D.D.C. 1999); *S. All. for Clean Energy v. U.S. Dep't of Energy*, 853 F. Supp. 2d 60, 68 (D.D.C. 2012).

[2] While the example was based on the actual royalty reports, details were changed to preserve the licensee's anonymity. *See* Tr. at 19:12-21.

the first $2,000. *See id.* 24:3-7. After the first $2,000, inventors receive 15% of the next $48,000 in royalties, for a maximum of $7,200. *See id.* at 17:1-3. Since the award exceeds $9,200 ($2,000 + $7,200), one would know that the licensee paid at least $50,000 in royalties. *See id.* at 24:8-12. If the award was between $2,000 and $9,200, one need only subtract the first $2,000 from the total and work backwards from there. *See* Def.'s Br. at 5 (describing such an example and the corresponding calculation). Finally, the amount beyond $9,200—the remaining $39,700—constitutes 25% of the licensee's royalty payments above $50,000. *See* Tr. at 25:16–21. $39,700 is 25% of $158,800. That brings the total royalty payments to $208,800.[3] So, as demonstrated here, a member of the public could work backwards using this formula to arrive at confidential information.

As it did previously, Plaintiff argues that such back-calculation is not possible. *See Am. Transparency*, 2025 WL 2779929, at *7. Plaintiff faults Defendant for relying on "simplified hypotheticals." Pl.'s Br. at 2. It explains that a number of variables could confound a person's ability to back-calculate, such as when an inventor receives royalty payments from more than one license, inter-institutional agreements or payments to non-inventor employees affect the amount inventors receive, or part of an inventor's award is redistributed because they reached the $150,000 cap on annual inventor-award distributions. *See* Pl.'s Br. at 2–7. Defendant acknowledges these possibilities. There will be instances in which such variables will make back-calculation difficult or even impossible. *See* Tr. at 91:3-10. Neither party quantifies the precise number, however. The question thus becomes whether Defendant's wholesale redaction of inventor awards was proper, or whether Defendant must conduct further review to determine

[3] At both the hearing and in its supplemental brief, Plaintiff pointed out that Dr. Kirby's presented calculations were erroneous, which she attributed to a transcription error. *See* Tr. at 49:22–51:6; Pl.'s Br. at 3. The court agrees with Dr. Kirby that this clerical error does not invalidate the premise that back-calculation is possible. *See* Tr. at 50:19–51:7; Def.'s Br. at 3 n.2. Nor does it undermine her credibility.

which awards cannot be used to back-calculate royalty amounts and disclose them. In other words, the outcome of this case turns on a segregability issue.

Recall that an agency must disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). To determine whether information is "reasonably" segregable, the court "looks to a combination of intelligibility and the extent of the burden in 'editing' or 'segregating' the nonexempt material." *Yeager v. DEA*, 678 F.2d 315, 322 n.16 (D.C. Cir. 1982) (citation omitted); *cf. Kwoka v. IRS*, 989 F.3d 1058, 1066–67 (D.C. Cir. 2021) (remanding to consider, in the context of a fee award petition, the agency's position that it "reasonably believed that segregating the exempt and non-exempt materials would impose an unreasonable burden"). *But see War Horse News, Inc. v. U.S. Dep't of the Navy*, No. 22-cv-3303, 2024 WL 4346345, at *8 (D.D.C. Sep. 30, 2024) (distinguishing defendant's claim that the required review would be "overly burdensome" from cases in which the agency claimed the search itself was overly burdensome).

Here, the requested information is not *reasonably* segregable given the amount of time it would take to review and produce it. Ms. Lampe estimated that, in addition to the time it would take to train personnel to do so, reviewing each of the 70,000 redacted lines to determine whether back calculation would be possible would take approximately 36,000 staff hours. Tr. at 99:3-13. This far exceeds the estimated amount of time in cases in which the court concluded that the review process would not be overly burdensome. *See, e.g.*, *War Horse News*, 2024 WL 4346345, at *9 (8,500 hours); *Kwoka v. IRS*, No. 17-cv-1157, 2018 WL 4681000, at *5 (D.D.C. Sep. 28, 2018) (2,200 hours). While the court need not draw a precise line to decide this case, 36,000 hours is firmly on the other side of it. The agency therefore properly withheld the requested information in full and is not obligated to conduct a further segregability analysis. *See Ayuda, Inc. v. FTC*,

70 F. Supp. 3d 247, 276 (D.D.C. 2014) (determining, based on the unique "facts and equities" of the case, that the agency "properly withheld the entire universe of information given the burden of removing the subset of exempt information").

**B.**

Because back-calculation is possible, the requested information is also confidential. In *Public Citizen*, the court held that the amounts licensees pay to NIH in royalties are confidential. *See* 209 F. Supp. 2d at 49. Plaintiff has not asked the court to revisit that conclusion. *See Am. Transparency*, 2025 WL 2779929, at *6 n.2 (citing Pl.'s Mem. at 6). Because confidential information can be extrapolated from the inventor-award amounts, such information is subject to withholding under Exemption 4. *See Flyers Rts.*, 71 F.4th at 1056–57; *Gulf & W. Indus.*, 615 F.2d at 529–30.

**V.**

Having concluded that Exemption 4 applies, the court now turns to foreseeable harm. An agency can satisfy the foreseeable harm requirement for Exemption 4 "by showing foreseeable commercial or financial harm to the submitter upon release of the contested information." *Seife v. FDA*, 43 F.4th 231, 241–42 (2d Cir. 2022). Defendant has made the necessary showing. NIH's former FOIA officer averred that information about a licensee's royalty payments provides insight into its cost structures and profit margins. Decl. of Gorka Garcia-Malene, ECF No. 24-3 [hereinafter Garcia-Malene Decl.], ¶ 13. If competitors gained access to this information, they could use it to undermine the licensee's marketing efforts. *Id.* As the *Public Citizen* court similarly observed, "if a competitor realized information about how much a licensee was paying for a royalty, it would immediately know the value the firm placed on that particular technology. This

knowledge, in turn, would certainly help competitors know which technologies and which areas of the market the licensee found particularly fruitful." 209 F. Supp. 2d at 49.

Moreover, some courts have considered whether disclosure would "dissuad[e] others from submitting similar information to the government." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019). Because of the competitive harms described above, disclosing this information would likely discourage other companies from licensing NIH's technology in the future. *See* Garcia-Malene Decl. ¶ 13; Tr. at 39:6-9. This, in turn, will "prevent[] these technologies from benefiting the public." Garcia-Malene Decl. ¶ 13; *see also* Tr. at 39:10-12 ("[W]e rely on these companies to develop technologies that we can't develop ourselves.").

Plaintiff offers two responses. First, Plaintiff points out that some of the listed licenses have expired or been terminated, which it labels a "complicating factor" in the foreseeable-harm analysis. Pl.'s Mem. at 13. Plaintiff does not explain why. *See id.* And the court does not see how information about an expired license would not still "help competitors know which technologies and which areas of the market the licensee found particularly fruitful." *Pub. Citizen*, 209 F. Supp. 2d at 49. Second, Plaintiff contends that, because Defendant chose to publish the formula, any foreseeable harm "would be the result of NIH's . . . own choices." Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 35, at 11. "Surely," Plaintiff continues, "FOIA does not allow an agency to take an action detrimental to its own alleged interests, then cry harm when a FOIA requester asks for records implicating those same actions." *Id.* But courts have allowed agencies to withhold "information that would not, in and of itself, cause harm, if the information, when combined with other readily available information, could cause harm to the submitter." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 93 F. Supp. 2d 1, 11

(D.D.C. 2000) (citing cases). And surely, too, FOIA—whose "basic purpose" is to "open agency action to the light of public scrutiny"—would not counsel in favor of results that would *discourage* agencies from voluntarily publishing information of the kind NIH did here. *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

**VI.**

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, ECF No. 24, and denies Plaintiff's Cross-Motion for Summary Judgment, ECF No. 28. A final, appealable order accompanies this Memorandum Opinion.

Dated: September 4, 2026

Amit P. Mehta
United States District Judge